IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| WILLIAM EUGENE HELTON, )<br>FRANCES MARIE ROBBINS, )<br>TERRI ANN PATE, WANDA )<br>GAIL RUSHING, and PAMELA )<br>KAY THOMPSON, )<br>  )<br>Plaintiffs; )<br>  )<br>vs. )<br>  )<br>TOKEN, INC., )<br>  )<br>Defendant. ) | 6:11-cv-02846-LSC |

MEMORANDUM OPINION

## I. Introduction

Before the Court is a Motion for Partial Summary Judgement, filed on October 25, 2012, by the defendant, Token, Inc. ("Token"). (Doc. 28.) Token seeks summary judgment in its favor as to the claims asserted by Frances Marie Robbins ("Robbins"), the only plaintiff remaining in this action. Specifically, Token seeks to dismiss Robbins's claim for unpaid overtime wages in violation the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, as well as her state law claims for fraud and breach of contract. Token asserts various arguments in support of its motion, including that Robbins is judicially estopped from litigating her claims because she failed to disclose

them in her Chapter 7 bankruptcy proceeding, which was filed on November 29, 2010. The issues raised in Token's motion for summary judgment have been fully briefed by both parties and are ripe for decision. For the reasons described below, Token's Motion for Partial Summary Judgment (Doc. 28) is due to be GRANTED.

## II.   Facts

Robbins began working at a Token convenience store sometime in January 2003. Her employment with Token effectively ended on December 27, 2010, when Token sold Robbins's store to a new owner. Robbins was initially hired as a part-time employee and was paid by the hour. Not long after she was hired by Token, Robbins's hours increased to full time and she received the job title of "store manager." As a store manager, Robbins was paid a weekly salary which started at $450.00 per week. Robbins's salary increased over the years to $500.00 per week from August 2008 through the end of her employment. Robbins did not receive any overtime pay for the period of time she was classified as a store manager. Robbins testified that she believed she was entitled to overtime pay "all the time" she worked for Token, and she further agreed that she understood that she was entitled to overtime pay from "the moment she started being paid by salary." (Doc. 30-6, Robbins's Dep. 49:22–50:15.) Robbins also testified that she complained to her supervisor about not receiving overtime

sometime in 2006 or 2007. (*Id.* at 50:16–53:6.) In this lawsuit, Robbins' asserts that Token's failure to pay overtime was a violation of the FLSA and she seeks payment for the unpaid wages. (Doc. 1 ¶ 13–17.)

For all times relevant to this dispute, Token had in place a Manager's Bonus Program ("Bonus Program"). Pursuant to the Bonus Program, store managers were eligible to receive a monthly bonus based on their individual store's performance. Additionally, the Bonus Program provided that managers would receive an annual bonus equal to the sum of their monthly bonuses for the year. On November 3, 2010, Robbins and other Token store managers were notified that Token was terminating the annual matching portion of the Bonus Program. (Doc. 39-3.) In this lawsuit, Robbins asserts that Token's elimination of the annual matching component of the Bonus Program amounted to fraud and breach of contract. (Doc. 1 ¶ 23–28.)

Robbins filed a voluntary petition for Chapter 7 bankruptcy on November 29, 2010, approximately one month before her employment with Token ended. (Doc. 30-1.) The schedule of assets (Schedule B) and Statement of Financial Affairs filed with Robbins's voluntary petition did not list her potential legal claims against Token. (*Id.*) On February 14, 2011, the bankruptcy trustee held a Section 341 Meeting of Creditors. At the creditors' meeting, Robbins's attorney orally informed the trustee that she

possessed an unpaid overtime claim, stating "we're gonna have to amend the schedules she's got a wage and hour case that we're gonna be filing and we're gonna have to amend it for that." (Doc. 38-2 at 2.) It does not appear the breach of contract and fraud claims were ever discussed, nor is there any evidence that either Robbins or her attorney provided the trustee with a potential value for the FLSA claim. Beyond the initial acknowledgment by Robbins's counsel, the potential FLSA claim was only briefly addressed. In response to the trustee's questions, Robbins's counsel stated that the FLSA claim would turn on the application of a managerial exemption, and he estimated that Robbins would be able to claim a $5,000 personal exemption on any recovery obtained. (*Id.* at 3.) The trustee concluded the discussion by stating "Ok we'll look at that because I may have to hire you to basically represent the estate in that. Just need to let Ms. Robbins understand how that works." (*Id.* at 4.)

The day after the Section 341 meeting, the trustee issued a no-asset determination, providing that "there is no property available for distribution from [Robbins's] estate over and above that exempted by law." (Doc. 30-3 at 3.) Then, on March 24, 2011, Robbins received a complete discharge from the Bankruptcy Court. Robbins did not amend her Schedule B or Statement of Financial Affairs to include her alleged claims against Token at anytime prior to the trustee's no-asset

determination or the bankruptcy court's discharge.

On August 15, 2011, Robbins, along with four other plaintiffs, filed the complaint in this action. As of that date, Robbins had still not made any attempt to amend her bankruptcy petition and schedules to include her alleged claims against Token. Token filed an answer to the complaint on December 28, 2011, asserting several affirmative defenses, including judicial estoppel. (Doc. 4 at 6, ¶ 5.) During a telephone call on September 14, 2012, counsel for Token informed Robbins's attorney that its judicial estoppel defense was based on the fact that Robbins had failed to disclose her legal claims against Token in her bankruptcy petition and schedules. Subsequently, on October 3, 2012, Robbins moved the bankruptcy court to re-open her bankruptcy case to allow her to amend her petition and schedules to include the claims against Token.[1] (Doc. 30-4 at 1.) Following a hearing on October 30, 2012, the bankruptcy court granted Robbins's motion to reopen her Chapter 7 case. (Doc. 30-5.) Robbins then filed an amended Schedule B and an amended Statement of Financial Affairs, setting out her claims against Token and valuing those claims at $50,000.00.

---

[1] Token described the telephone call and the subsequent amendment of Robbins's bankruptcy petition in its narrative statement of undisputed facts included in its brief in support of its motion for partial summary judgment. (Doc. 29 at 6.) Insofar as Robbins disputes this statement of fact, she does not dispute the conversation took place or its content, nor does she dispute that the bankruptcy petition was amended after the call. Rather, Robbins' merely offers that Token's judicial estoppel defense is unfounded because she disclosed her claim at the Section 341 meeting. (Doc. 38 at 3.)

(Docs. 38-4 & 38-5.)

### III. Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56 "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotations

omitted); *see also* Fed. R. Civ. P. 56(c). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp.*, 281 F.3d at 1224 (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

## IV. Analysis

Token asserts several grounds for which this Court should grant summary judgment in its favor. Because the Court finds Token's judicial estoppel argument is sufficient to dispose of Robbins's claims, the Court's analysis will not go beyond this defense.

"Judicial estoppel is an equitable doctrine invoked at a court's discretion." *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002) (citing *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)). Application of the judicial estoppel doctrine prevents a party from "asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *Burnes*, 291 F.3d at 1285 (quoting 18 James Wm. Moore et al., *Moore's Federal Practice* § 134.30, p. 134–62 (3d ed. 2000)). The purpose of the doctrine is "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire*, 532 U.S. at 749–50.

Because judicial estoppel protects the process, not a specific party, the one asserting the doctrine need not show that it detrimentally relied on the other party's previous assertions or even that it was involved in the previous proceeding. *Burnes*, 291 F.3d at 1286.

The Eleventh Circuit has established two factors which predominate in applying judicial estoppel to a particular case. *Burnes*, 291 F.3d at 1285 (noting that the "two factors applied in the Eleventh Circuit are consistent with the Supreme Court's instructions" in *New Hampshire*); *Barger v. City of Cartersville*, 348 F.3d 1289, 1293 (11th Cir. 2003). First, a party's allegedly inconsistent position must have been "made under oath in a prior proceeding." *Burnes*, 291 F. 3d at 1285 (quoting *Salomon Smith Barney, Inc. v. Harvey*, 260 F.3d 1302, 1308 (11th Cir. 2001)). Second, the "inconsistencies must be shown to have been calculated to make a mockery of the judicial system." *Id.* "[T]hese two enumerated factors are not inflexible or exhaustive; rather, courts must always give due consideration to all of the circumstances of a particular case when considering the applicability of this doctrine." *Id.* at 1286.

Before applying the two-prong test, it is helpful to lay some groundwork regarding a debtor's duty to disclose in a bankruptcy proceeding. A debtor seeking protection under the bankruptcy laws is required to disclose all assets, or potential

assets, to the bankruptcy court by filing a schedule of assets and a statement of the debtor's financial affairs. 28 U.S.C. § 521(1). "[T]he importance of full and honest disclosure cannot be overstated." *Burnes*, 291 F.3d at 1286 (quoting *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d. Cir. 1996)). The Eleventh Circuit "has emphasized the importance of full and honest disclosure in bankruptcy proceedings, stating that it is 'crucial' to the system's 'effective functioning.'" *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1274 (11th Cir. 2010) (quoting *Burnes*, 291 F.3d at 1286). This duty to disclose "applies to proceedings under Chapter 13 and Chapter 7 alike" and "is a continuing one that does not end once the forms are submitted to the bankruptcy court; rather, a debtor must amend her financial statements if circumstances change." *Id.* Full disclosure is particularly important because "creditors rely on a debtor's disclosure statements in determining whether to contest or consent to a no asset discharge. Bankruptcy courts also rely on the accuracy of the disclosure statements when considering whether to approve a no asset discharge." *Burnes*, 291 F.3d at 1286.

With these principles in mind, the Court turns to the Eleventh Circuit's test for judicial estoppel. There can be no debate that Robbins has taken inconsistent positions under oath. Robbins's voluntary bankruptcy petition, submitted under oath to the

bankruptcy court, failed to mention her legal claims against Token. The effect of this filing was that Robbins represented to the bankruptcy court that no such claims existed. Of course, she now asserts those omitted claims in the action pending before this Court.

Having established that Robbins has adopted inconsistent positions, the Court must evaluate whether these inconsistences were " calculated to make a mockery of the judicial system." *Burnes*, 291 F. 3d at 1285. This is a question of intent. The Eleventh Circuit has stated that judicial estoppel may only apply in situations involving intentional contradictions, "not simple error or inadvertence." *Id.* at 1286. However, direct evidence that a party acted with an intent to deceive the court is not required. Rather, "deliberate or intentional manipulation can be inferred from the record" where the debtor has (1) knowledge of the undisclosed claims and (2) a motive for concealment. *Barger*, 348 F.3d at 1294 (quoting *Burnes*, 291 F.3d at 1287).

It is undisputed that Robbins had knowledge of her legal claims against Token at the time she filed her Chapter 7 bankruptcy petition on November 29, 2010. Robbins's FLSA claim is based on unpaid overtime wages for time worked between 2003 and 2010. Robbins had knowledge of the facts giving rise to this claim as early as 2003, as evidenced by her testimony that she felt she was entitled to overtime pay

from the moment she became a salaried employee. Additionally, she complained to her supervisor about not getting overtime pay in 2006 or 2007, well before the bankruptcy suit was filed. Robbins also had knowledge of her breach of contract and fraud claims when she filed for bankruptcy because those claims arose from Token's discontinuation of its year-end Bonus Program on November 3, 2010, less than a month before Robbins filed for bankruptcy.

As to motive, the Eleventh Circuit has held that a debtor in bankruptcy has a motive to conceal claims from creditors. *See DeLeon v. Comcar Indus., Inc.*, 321 F.3d 1289, 1291 (11th Cir. 2003) ("[A] financial motive to secret assets exists under Chapter 13 as well as Chapter 7 because the hiding of assets affects the amount to be discounted and repaid."). Robbins, however, contends that there is no evidence of motive in this case because any recovery she obtained from these suits would have been exempt from inclusion in the bankruptcy estate pursuant to Ala. Code § 6-10-6 or 15 U.S.C. § 1673, or simply would have been *de minimis*. There are several flaws with this argument. First, Robbins did not possess the legal authority to unilaterally determine that her claims were of such little value so as to not warrant disclosure. Rather, Robbins had a duty under bankruptcy law to make a full and honest disclosure of all assets, regardless of their value, so that her creditors could make an informed

decision about whether to contest the bankruptcy court's no-asset discharge. Second, it is unlikely the statutes cited would have exempted monetary damages recovered from in this lawsuit. The first statute, Ala. Code § 6-10-6, expressly states that "wages, salaries or other compensation" are not exempted; yet here, Robbins seeks back wages in the form of unpaid overtime pay. The second statute cited, 15 U.S.C. § 1673, relates to restrictions on garnishments, which is inapposite here because even if Robbins's is successful on her monetary claim her recovery would not be subject to garnishment.

Because Robbins had knowledge of her claims and a motive to conceal those claims at the time she filed her petition for bankruptcy, the Court finds it appropriate to infer "deliberate or intentional manipulation" of the judicial process. *Burnes*, 291 F.3d at 1287. Nevertheless, Robbins argues that several facts militate against a finding that she engaged in intentional manipulation. Specifically, Robbins contends that her oral acknowledgment of her claims before the trustee at the creditors' meeting, as well as the fact that she was recently permitted to reopen her bankruptcy proceeding to amend her petition and schedules, both show that she did possess the required intent to support application of judicial estoppel. The Court disagrees.

The fact that Robbins orally informed the trustee that a potential wage an hour

claim existed does not change this Court's analysis. As an initial matter, the Court has not been provided any authority that this type of disclosure is sufficient to satisfy the debtor's obligation to make a "full and honest" disclosure of all assets. Indeed, the Court is skeptical that this type of disclosure would ever be sufficient since an oral statement at a creditors' meeting does not create an official, documented record describing the potential claims, and hardly gives creditors the type of information needed evaluate and potentially challenge a no-asset determination.

However, even assuming an oral disclosure at a creditors' meeting is appropriate in some cases, it was nonetheless insufficient here. First, Robbins did not provide any disclosure whatsoever about her claims for breach of contract and fraud. And with respect to the FLSA claim, the only information provided to the trustee was that Robbins had a wage and hour case that would soon be filed, and that the schedules would need to be amended accordingly. Robbins, however, never provided the trustee with any information about the value of her FLSA claim, a fact that would have been particularly relevant when determining whether a no-asset finding was appropriate. In the absence of a full disclosure about the value of Robbins's claims, the trustee lacked sufficient information to make a no-asset determination, and conversely, the creditors lacked the information necessary to make an informed decision about

whether to object to the trustee's finding. Furthermore, Robbins cannot contend that the value of her claim was unknown at the time of the creditors' meeting. While there is always some uncertainty about how much will be recovered in a suit for unliquidated damages, Robbins had all the facts and information necessary to assess the value of her claim because she could calculate the amount of unpaid overtime by adding up the hours she worked each week, exceeding forty hours, for which she received no pay.

The Court has only found one other case where the Eleventh Circuit has addressed the adequacy of an oral disclosure at a creditors' meeting. In *Barger v. City of Cartersville*, 348 F.3d 1289 (2003), the plaintiff-debtor told the trustee during the creditors' meeting about a pending employment discrimination claim that she had failed to list on her schedule of assets. When the court inquired about the claim, the plaintiff stated that she was seeking injunctive relief, but failed to state that she was also seeking monetary damages. Based on these representations, the trustee issued a no-asset determination and the bankruptcy court ultimately issued a no-asset discharge. Subsequently, the district court presiding over the plaintiff's discrimination claim entered summary judgment against the plaintiff, holding that she was collaterally estopped from asserting her claim because she failed to adequately disclose her claim in bankruptcy. The Eleventh Circuit affirmed, stating: "The foremost responsibility

in this matter was for [the plaintiff] to fully disclose her assets. She did not satisfy her duty. Instead, she dissembled to the trustee and indicated that her discrimination claim had no value." *Barger*, 348 F.3d at 1296.

Although Robbins's oral disclosure at the creditors' meeting was arguably more revealing and less deceptive than the statement made in *Barger*, it nonetheless failed to constitute the type of "full and honest" disclosure required in bankruptcy proceeding. *Burnes*, 291 F.3d at 1286. As in *Barger*, the trustee in this case was not provided the type of information, such as the value of the potential claims, which would have been necessary to reach an informed decision about whether a no-asset determination was appropriate. Moreover, the creditors were denied access to the full information necessary to assess whether they should have contested the bankruptcy court's no-asset discharge. Thus, even if oral disclosure to the trustee is sufficient in some cases, it was not sufficient here.

Finally, Robbins's last contention that her recent attempt to reopen her bankruptcy case to include her claims against Token in her schedule of assets is equally unavailing. Robbins only made this effort after the Token's counsel informed her attorneys that it intended to raise judicial estoppel in its defense. The Eleventh Circuit rejected such efforts under virtually identical circumstances in *Barger*, stating:

> Allowing [a debtor] to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them. This so-called remedy would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtor's assets.

348 F.3d at 1297 (quoting *Burnes*, 291 F.3d at 1288). Pursuant to holding in *Barger*, Robbins's attempt to retroactively alter her bankruptcy filings after being notified about Token's judicial estoppel defense cannot save her claims.

## V.    Conclusion

For the forgoing reasons, Token's Motion for Partial Summary Judgment (Doc. 29), is due to be GRANTED. A separate order will be entered consistent with this Opinion.

Done this 23rd day of April 2013.

> _____
> L. SCOTT COOGLER
> UNITED STATES DISTRICT JUDGE
> [170956]